## R. C. Tway Mining Company v. Tyree.

(Decided February 11, 1919.)

Appeal from Knox Circuit Court.

1. Master and Servant—Fellow Servants—Negligence.—Employees in control of separate coal cars in a coal mine and performing the duty of driving the mules by which they are hauled, are not fellow servants of other employees of the same master in control of like cars in the same coal mine and performing the duty of driving the mules hauling them; and if a servant in control of one of such cars and engaged in driving the mule hauling it, is injured by the negligence of a servant in control of another car and engaged in driving the mule hauling it, the master will be liable.

2. Master and Servant—Fellow Servants—Negligence.—The master will not be excused for negligence resulting in injury to one servant inflicted by another servant in the same department of service and engaged in like work, unless the servants are so engaged and situated as that each, by ordinary care and attention in the performance of his duties, may protect himself from injury resulting from the negligence of the other.

3. Master and Servant—Fellow Servants—Negligence.—Where the servant is injured by another servant of the same master, who is

not directly associated with him or in any degree subject to his control, or even advice, and against whose negligence he has no means of protecting himself, he may recover of the master damages for the injuries caused him by the negligence of such other servant, whether such negligence be ordinary or gross, and without reference to the position or place the servant causing the injury holds.

BLACK & OWENS for appellants.

J. D. TUGGLE and GOLDEN & LAY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, Walter B. Tyree, recovered of the appellant, R. C. Tway Mining Co., in the court below, a verdict and judgment for $700.00, by way of damages for personal injuries received by him in 1915, while in the latter's employ as a mule or car driver in its coal mine; the injuries resulting, as alleged, from its negligence or that of one of its servants, appellee's superior. The appellant asks a reversal of the judgment on the following grounds, viz.: (1) That the trial court erred in instructing the jury; (2) that a peremptory instruction directing a verdict for the defendant should have been given; (3) that the verdict returned by the jury is excessive in amount, and unsupported by and flagrantly against the evidence.

It appears from the evidence that appellee was one of several servants in appellant's employ charged with the duty of removing loaded coal cars, hauled by mules, from the rooms of the mine to a side track at the mouth of the mine where they were left, and the mules hitched to empty cars, standing on an adjacent track, to be hauled back to the various rooms of the mine and there loaded with coal. Each mule and car was controlled by the driver in charge thereof, whose duty it was to so operate same as to prevent collisions with the mules and cars of other drivers in the mine. In moving a car the driver usually sat on the front of it immediately behind the mule, from which position he was expected to control the movements, both of the animal and car. For the driver to be so seated in his car seems to be a custom in mines where coal cars are hauled by mules. At any rate, it was, according to the evidence, the custom in appellant's mine at the time appellee received his injuries.

The injuries were received in the following manner: one Patton Miller, also a mule driver in appellant's mine,

after hauling a loaded car to the side track and unhitching the mule turned his back to the animal for the purpose of coupling the car to other loaded cars standing on the same track, whereupon the unsecured mule left the side track, went over to the track upon which he had just hauled the loaded car, and proceeded to walk down it toward the interior of the mine.

When Miller discovered the departure of the mule he set out to overtake and capture it, which served to increase the latter's gait and caused it to collide with the mule attached to a loaded coal car which appellee happened at the time to be driving over the same track from the interior of the mine to the side track for loaded cars near the entrance. As appellee was seated on the front of the car he was hauling, the collision of the escaped mule with the one he was driving caused the latter to fall back upon him, pinion him to the car, and thereby produced his injuries.

We will first consider the reasons urged in support of appellant's contention that the trial court should have peremptorily instructed the jury to return a verdict in its behalf. It is insisted that the peremptory instruction was authorized because appellee's injuries resulted from his contributory negligence; or if not so caused, that they resulted from negligence of a fellow servant, both of which grounds of defense are relied on in the answer, following that pleading's denial of the negligence charged to appellant by the petition. The only evidence cited by appellant's counsel as tending to show appellee guilty of contributory negligence, was his admitted failure to stop at and look beyond an air curtain, immediately before his mule collided with that of Miller, for the purpose of ascertaining whether the track at the point of collision was free of obstruction. It appears from the evidence that there was, within twenty or thirty feet of the place of collision, a cloth curtain across the main entry of the mine in use for keeping fresh air in certain inner side entries where miners were at work, and that appellee had to pass under or through this curtain in hauling the cars in and out of the mine. This the evidence shows he did when his injuries were sustained, and at all other times, as it was done by other drivers; that is, by causing the mule, himself and car to pass under the curtain, which could easily be forced up from its hanging position to admit such passage, and as easily fall or slide back over the mule, driver and car as the

passage was being effected and thereafter resume its accustomed hanging position for closing the entry.

Appellee testified that he sat on the front of the car in passing under the curtain because he could in that way obtain a quicker and better view of the track beyond, better control of the mule and prevent the catching of the curtain on the car. He admitted his position on the car required a momentary ducking or turning of his head in passing under the curtain to prevent the extinguishment of the light of the miner's lamp attached to the front of his cap, but said that such moving of the head is so quickly done it can not cause any material diversion of the mind or vision of the driver from the mine track ahead of him; furthermore, that if he had stopped at the curtain, the mule of Miller was so close to the curtain he would have been upon him before he could have looked beyond it or taken any step to protect himself or mule in his control from the collision. We are unable to see in this practice of appellee, followed as usual on the occasion of his injuries, or in his failure to stop his mule and car before passing the curtain and raise it to ascertain the condition of the track beyond, such contributory negligence as authorized a peremptory instruction directing a verdict against him.

There is in the record no direct evidence that appellant had a rule, printed or otherwise, requiring its mule drivers to stop upon reaching an air curtain and raise and look beyond it to see that the mine track was safe for use. The mine boss testified that each mule driver in appellant's mine was instructed to look to his own safety and that of his mule and car; and to see to it that his mule was not permitted to run into another mule or car; and further, that he (the boss) had instructed some of the drivers to stop at the air curtain before driving through and see that the track beyond was clear. He admitted, however, that appellee was never instructed by him to observe this precaution. But notwithstanding the absence of a rule requiring the observance of this precaution by appellee, it was nevertheless competent for the jury to determine from the evidence whether he should have taken such precaution and whether his failure to do so, was such failure to exercise ordinary care for his own safety, as constituted negligence; and, also, whether, but for such negligence, he would not have been injured. This question was properly submitted to the jury by an instruction cor-

rectly defining and applying the law of contributory negligence. Guided by that instruction the jury, as was their province, decided this issue of fact adversely to the appellant's contention; and as there was evidence upon which to rest the decision, we are constrained to hold that appellee, in the matter of receiving his injuries, was not guilty of contributory negligence.

We think it patent that appellant can not here escape liability on the ground that appellee's injuries were caused by the negligence of a fellow servant. This conclusion we rest upon the fact that Miller, its employe, whose negligence caused appellee's injuries, was not a fellow servant of the latter.

We have repeatedly held that operators of separate cars, in a coal mine, are not fellow servants of other employes of the same master engaged in operating other cars; and that if a servant engaged in the operation of one of these cars, is injured by the negligence of a servant engaged in the operation of another car, the master will be liable; and this is true, whether the cars be hauled by mules, propelled by steam or electricity, or pushed by hand. Elkhorn Mining Corporation v. Paradise, 180 Ky. 572; Cummins v. Sparks Co., 173 Ky. 803; Harris v. Rex Coal Co., 177 Ky. 630. In the first of the cases cited, the plaintiff, while pushing a loaded car in a coal mine, was injured by the negligence of other employes of the master, by running against him other loaded cars being pushed by them. In the second case, the plaintiff, who was the operator of a car in a rock quarry, was injured by the negligence of other employes of the master in operating a similar car. In the third case, death resulted to a miner from the negligence of another employe of the master, who was associated with the decedent in operating coal cars.

The soundness of the rule announced in the cases, *supra*, is made manifest by the statement of the reasons underlying it, set forth in the opinions; notably that of Harris v. Rex Coal Co., wherein the following excerpt from the opinion in L. & N. R. R. Co. v. Brown, 127 Ky. 73, is quoted with approval: "When the servant is injured by employes of the same master, who are not directly associated with him and with whom he is not immediately employed and whose qualifications for the place they occupy he has no means of knowing, and in whose selection he has no voice, and over whose conduct and actions he has no control, and against whose negli-

gence and carelessness he can not protect himself, he may recover damages from the master for injuries received through their negligence, whether it be ordinary or gross, and without any reference to the position or place the servant causing the injury holds.''

The opinion also quotes with approval the following statement of the same doctrine found in Louisville Ry. Co. v. Hibbitt, 139 Ky. 43: ''The fellow servant rule is invoked in many cases, but applied in few. This court is fully committed to the doctrine of what is known as the 'association theory,' or, in other words, the master will not be excused for negligence resulting in injury to one servant which is inflicted by a fellow servant, unless the servants are so engaged and situated as that each by carefulness and attention in the performance of his duties may protect himself from injury caused by the negligence of the person with whom he is working.''

Appellee's injuries were obviously caused by the act of appellant's servant, Miller, in permitting the escape of the mule he was driving after unhitching it from the loaded car he had hauled to the side track. According to the evidence it was Miller's duty to maintain control of the mule, and, after unhitching him from the loaded car on the side track, to use ordinary care to keep him from going upon the track traveled by loaded cars coming out of the mine; as to permit such use of that track tended to obstruct it and endanger the safety of the straying mule, that of any other mule that might at the time be hauling a loaded car thereon, and the life of the driver in charge. The evidence shows that after unhitching the mule from the loaded car Miller left him untethered and unwatched, while he took time to couple his car to others then on the track, in doing which his position was such that he could not see the mule. It can not be told from the evidence how much time was consumed by Miller in making the coupling, but before it was completed the mule moved from where it had been left by Miller and when again seen by the latter, after the coupling of the cars was completed, the animal had gotten on the main track and was proceeding on it toward the interior of the mine when it collided with the mule driven by appellee; the collision occurring after appellee's mule and car had passed the air curtain and before Miller could catch the escaped mule. Proof of the foregoing facts and circumstances furnished some evidence of negligence on the part of Miller requiring the submission of the case to the

jury; and we are not prepared to say that the evidence was not of sufficient strength to support the jury's finding that Miller was negligent, and that his negligence caused appellee's injuries.

The above conclusion so effectually disposes of appellant's complaint of the alleged insufficiency of the evidence to support the verdict, as to render further consideration or discussion of it unnecessasy. It follows from what has been said, that the refusal of the trial court to direct a verdict for appellant by the giving of the peremptory instruction asked by it after the close of the evidence, was not error.

Appellant's complaint of the instructions given by the trial court is two-fold. It is insisted (1) that they erroneously authorized a verdict for appellee if his injuries were caused by ordinary, instead of gross, negligence on the part of appellant's servant, Miller; (2) that they failed to advise the jury that the damages they might allow appellee should not include any amount for physical or mental suffering, loss of time or the impairment of his earning capacity, that may have been caused by an injury he sustained to the same arm before those complained of in the petition were received.

It will sufficiently answer the first objection to say that while it has frequently been held in this jurisdiction that a servant in order to recover of the master for injuries, not resulting in death, caused by the negligence of his superior in the master's service, must show that the negligence of such superior was gross, in its application this doctrine is confined by the modern trend of authority, especially the decisions of this court, to cases in which the servant is injured by the negligence of a superior officer who has immediate control of or supervision of him. As said in L. & N. R. R. Co. v. Brown, supra, "The reason of this rule is that the servant when he engages to work, undertakes that he will assume the ordinary risks incident to the employment, and will not hold the master liable for the ordinary negligence of those employes with whom he is engaged, whose actions and conduct he can observe and, if necessary, guard against."

When, however, the servant is injured, as was the appellee, by the negligence of another employe of the same master, who is not directly associated with him or in any degree subject to his control, or even advice, and against whose negligence he has no means of protecting

himself, he may recover of the master damages for the injuries caused him by the negligence of such other servant, whether, as further said in L. & N. R. R. Co. v. Brown, *supra*, "it be ordinary or gross, and without any reference to the position or place the servant causing the injury holds."

It is patent from what has been said that in order to recover of appellant damages for the injuries he sustained by the negligence of its servant, Miller, appellee was not required to prove such negligence gross, but only that it was ordinary negligence, i. e., the failure to use ordinary care; and as the instructions given so advised the jury, they correctly expressed the law, and are, therefore, not open to the criticism of them indulged in by counsel for appellant.

Appellant's complaint of the instruction containing the measure of damages rests upon certain evidence as to previous injury sustained by appellee to the same arm that was injured in the mine. There was evidence to the effect that appellee's arm, injured in the collision with the mule, had more than a year prior to that accident been slightly injured in a fight or scuffle, which required some subsequent surgical treatment of the arm. But its recovery seems to have been complete, for he had been constantly at work in appellant's mine nearly a year when the arm was last injured. The last injury was followed by a surgical operation for the removal of the small bone, which, according to the testimony of the surgeon, gave some slight indication of being in a tubercular condition that might have had some connection with the first injury to the arm. But conceding this to be true and, also, that appellant might properly have been given a separate further instruction telling the jury that they should not allow appellee any damages for the first injury to his arm or for any aggravation of the last injury by the first, neither such an instruction nor any other on the subject of the measure of damages was asked by appellant, and the one given on that subject by the court, in language and meaning, excluded the allowance of any damages to appellee resulting from the first injury by confining the recovery to only such as were shown to have directly resulted to him from the last injury, and setting forth the several elements or items of damages properly recoverable under the pleadings, for that injury alone. As this instruction, though less elaborate in expression than it might have been made, was sufficient for the cor-

rect guidance of the jury on the question of damages, and appellant did not ask the further instruction on the measure of damages it now complains the trial court did not give, the failure of that court to give it is not reversible error.

Appellant's complaint of the amount of the verdict can not be sustained. For the practically total impairment of the use of the right arm, to say nothing of the physical and mental sufferings, loss of time, and the expense of cure, resulting from the injury causing such impairment, $700.00 damages can not fairly be said to be excessive in amount.

We have found in the record no legal cause for disturbing the verdict of the jury; therefore, the judgment is affirmed.