## Delphine Slattery vs. The Hartford-Connecticut Trust Company, Administrator, et al. (Estate of Edward A. Slattery).

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued March 9th—decided June 14th, 1932.

*Benjamin Slade,* with whom was *Louis Weinstein,* for the appellant (plaintiff).

*Arthur L. Shipman* and *Julius H. Amberg,* of Michigan, with whom was *Arthur L. Shipman, Jr.,* for the appellee (defendant Cress).

MALTBIE, C. J. Edward A. Slattery died intestate in Hartford January 7th, 1930, leaving a considerable estate consisting entirely of personal property, and a widow, Delphine Slattery, and son, Oscar Clarence Cress. The Court of Probate adjudged the son to be a distributee of the decedent's estate and the widow appealed to the Superior Court, claiming to be the sole person entitled to inherit from him under our statutes of distribution. General Statutes, §§ 4980, 5156. The son was born in Michigan while the deceased was resident there with his wife. Later she secured a divorce from the deceased there and the custody of the son was awarded to her. She remarried and the son was afterward adopted in Michigan by her second husband while they were all residing there. The decedent also married again, his wife being the widow now surviving him. By the laws of Michigan under which the son was adopted he would inherit from both his natural and his adopting parents. In case of an adoption under our law, an adopted child can inherit from the adopting parents or their relatives as though he were a natural child but can no longer inherit from his natural parents or their relatives. General Statutes, § 4810. The case has been reserved for our advice, the two questions asked summing up to this, whether the son was entitled to inherit from the decedent under our statutes of distribution.

Unless by reason of his adoption the son has lost his right to do so, he would be entitled to a distributive share of his father's estate. The widow contends that the right of the son to inherit is to be determined by our law, and that the word "children" used in the statutes of distribution we have cited must be restricted in meaning to such children as are not under other provisions of our law precluded from inheriting from their natural parents. Both of these propositions may be conceded. Undoubtedly our general statutes of distribution are to be read with our statute of adoption; *In re Walworth's Estate,* 85 Vt. 322, 333, 82 Atl. 7; *Fosburgh* v. *Rogers,* 114 Mo. 122, 21 S. W. 82; and a child who has been adopted under the latter would not be included within the term "children" in the former. But this does not get us very far, because it leaves unsolved the question whether in this case the son is debarred from inheriting by our statutes or laws.

"It appears to be well settled in all jurisdictions where the common law constitutes the rule of decision, that the right of inheritance of a child is affected by its adoption only to the extent that the statutes bearing on the matter in terms or by implication provide." *In re Darling,* 173 Cal. 221, 223, 159 Pac. 606. The son has not lost his right to inherit from his natural father by the terms of our statute of adoption, because that takes away the right of an adopted child to inherit from his natural parents only in case of adoption under its terms. See *Ross* v. *Ross,* 129 Mass. 243. The Michigan statute of adoption in force when the son was adopted there, provided, as it still does, that a person or persons adopting a child "shall thereupon stand in the place of a parent or parents to such child in law, and be liable to all the duties, and entitled to all the rights of parents thereto; and such

child shall thereupon become and be an heir at law of such person or persons, the same as if he or she were in fact the child of such person or persons." Michigan Public Acts, 1891, No. 77, Compiled Laws, 1929, § 15955. The statute does not contain any provision that the child may continue to inherit from his natural parents. This result is accomplished by a construction of the statute, under which it is held not to have been intended to take away such a right of inheritance. *In re Klapp's Estate,* 197 Mich. 615, 164 N. W. 381; *In re Roderick's Estate,* 158 Wash. 377, 291 Pac. 325; 1 R. C. L. 614; 1 C. J. 1400. The son is not therefore coming into this State to assert an incident which the Michigan law has annexed to his status as an adopted child; and this serves to distinguish this case from most of those cited by counsel in argument. His position is that, though he has been adopted, the effect of that adoption does not extend so far as to destroy his right to inherit from his natural parent. The widow does not ask us to refuse entirely to recognize the adoption because in its restricted form it would not accord with the laws and policies of this State; see *Woodward's Appeal,* 81 Conn. 152, 70 Atl. 453; of course to take such a position would be fatal to her claim. In effect she asks us to add to the incidents of adoption fixed by the Michigan statute another and very important one, that an adopted child may not inherit from its natural parents. This we cannot and have no disposition to do.

It has seemed wise to our legislature to debar a child adopted under our statutes from the right of inheritance from his natural parents and it has to this extent established our public policy. But it has not attempted to lay down any rule applicable in the case of children coming here from another State where they have been adopted under laws which do not take

away that right. Cf. General Laws of Massachusetts, Rev. 1921, Chap. 210, § 9. Such a right is not contrary to good morals or a sound public policy, as is evident from the fact that almost all the States of the Union admit it. Recognition of it here would not be injurious to our public rights or violate our positive laws. Nor is it so opposed to any established policy of our own that there is sufficient reason for us to refuse to recognize it. The mere fact that to give effect to the restricted nature of the Michigan statute of adoption might result in allowing a child adopted under it greater rights than he would have if adopted under our own law is not ground for refusing to uphold those rights. "Dissimilar provisions are to be expected, but even if a foreign law gives a right which ours does not, or bases the right upon a different theory of justice, it in no way establishes that we are right and the foreign State wrong. We are not at liberty to refuse the enforcement of the foreign law in order to suit our own view of what is fair and right under the stated circumstances. Our courts 'do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.' *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 111, 120 N. E. 198." *Reilly* v. *Pepe Co.*, 108 Conn. 436, 446, 143 Atl. 568. On the other hand, a child adopted under a law which does not take away the right to inherit from his natural parents, if he has arrived at years of discretion, or those responsible for his well being, if he has not, may well weigh this fact before entering upon adoption proceedings, and it would be unfortunate if his reasonable expectation of such an inheritance might be defeated by the chance that the natural parent or parents may be domiciled at his death in a State not recognizing that right as regards

those adopted under its own statutes. See *Moore* v. *Saxton*, 90 Conn. 164, 170, 96 Atl. 960. We find nothing in our statutes or the applicable principles of law which would justify us in refusing to regard the son as included in the word "children" as used in our statutes of distribution.

We therefore answer the questions propounded as follows: The appellee Oscar Clarence Cress is entitled to share in the estate of the decedent as his child in accordance with our statutes of distribution.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.