J. Clark Taylor, Sr. *v.* John L. Taylor *et al.*

*(Nashville,* December Term, 1930.)

Opinion filed  April 4, 1931.

Seay, Stockell, Edwards & Keeble, W. J. Webster, J. C. Taylor, Jr. and Sam Holding, for plaintiff in error.

J. C. VOORHIES, HORACE FRIERSON and L. Z. TURPIN, for defendant in error.

MR. JUSTICE· CHAMBLISS delivered the opinion of the Court.

This appeal is from an order dismissing the intervening petition of Mrs. Luzelle Hodge Allen seeking to become a party to a contest over the will of Len Taylor. ·Petitioner shows that she is the adopted daughter of Mary L. Hodge, a deceased sister of Len Taylor, and her claim is that by virtue of her adoption by this sister she has the right to participate in the contest as. an heir of Len Taylor.

The question presented is whether or not an adopted child of a deceased sister of an intestate has the right to share in the estate of the intestate, who dies leaving neither widow, nor children, nor descendants of children, nor father, nor mother, but a brother, a sister, and children of a deceased brother.

The trial Court conceived this issue to be controlled by *Murphy* v. *Portrum,* 95 Tenn., 605, opinion by WILKES, J. Therein it was held that property descended from the father to an illegitimate·child who had been adopted, but not legitimated, descends at his death intestate to his mother, rather than to the father's next of kin, under the statutes providing for inheritance by the mother from an illegitimate child.

Finding that, while the petition had prayed for both adoption and legitimation, the decree was for adoption only, the opinion proceeded:

"The differences between adoption and legitimation are marked, and, in some contingencies, far reaching.

By legitimation the child acquires such a legal status as will enable it to inherit from its father, and through him from the father's next of kin, direct and collateral. Code, Sec. 4387; *McKamy* v. *Baskerville,* 2 Pickle, 459. Whereas, by adoption he only acquires such legal status as enables him to succeed to the real and personal estate of the adopting parent and beyond this gives him no inheritable right. He cannot inherit from the father's next of kin, nor can the father or his next of kin inherit from such child. *Helms* v. *Elliott,* 5 Pick., 446; *McKamy* v. *Baskerville,* 2 Pick., 459."

And again, on page 610:

"The child being adopted, and the father dying, the property descended to and vested in the child, and it necessarily follows that in no event could the next of kin of the father inherit from the adopted child, as it had no inheritable blood as to them and they none as to the adopted child."

Giving application to the views expressed in the above quoted paragraphs, the Court holds that on the death of the adopted child, who was an illegitimate, the property passes to the mother, pursuant to the Statute providing for descent of the property of an illegitimate child dying intestate. Shans. Code 4166.

If in like manner application of the views quoted be given to the situation here presented, it follows that this adopted daughter does not inherit from the next of kin, the brother of the adopting mother.

In *Helms* v. *Elliott,* 89 Tenn., 446, cited by Mr. Justice WILKES, the case in judgment was this:

Lewis Jones died leaving a daughter, a grandson by a deceased daughter, and an adopted son, as his only

heirs at law. The grandson died intestate without child, brother or sister, or descendants of either, and without wife, father or mother. An aunt and an adopted uncle were living. It was held that the adopted uncle took no part of the estate.

The opinion in that case, by CALDWELL, J., after quoting from the adoption statute, Act of 1851-2, Chap. 238, proceeds as follows:

"As between the adopting parent and the adopted child the statute declares, in the plainest terms, that the adopted child shall, by the act of adoption, acquire all the rights of a child born to such parent. The adopted child becomes entitled to the same protection and support as if born the child of the adopting parent, and is given the capacity of inheriting or succeeding to the estate of the adopting parent as heir or next of kin. The adopting parent assumes the same parental obligations to the adopted child as if such child were born to such parent, and the adopted child is clothed with the same rights in the estate of the adopting parent as an heir or next of kin. This is the full measure of the benefits conferred upon the adopted child. No claims are given upon any one except the adopting parent; no property rights are conferred except in the estate of such parent.

"It is contended that the legal status of the adopted child is the same as that of the child born in lawful wedlock, and that, as a consequence, the same rights of heir and next of kin exist in the one case as in the other—not only as to the parent, but as to all other persons. This position is sound in part only. So far as the parental obligations and the estate of the adopting parent are

concerned, it is well taken, but beyond that it is not tenable. As to the estates of other persons than the adopting parent, the law of adoption fixes no right in the adopted child. It is only as to the adopting parent that the adopted child is made 'heir or next of kin' by the statute. By the adoption Anderson Lewis, the adopted son, became vested with all the rights of heir and next of kin of Louie Lewis, the adopting father; but he was not thereby made the heir and next of kin of the children born to Louie Lewis. As to them he occupied the same relation in law after the adoption as before—that of a stranger in blood. The relation between Louie Lewis and Anderson Lewis was purely personal. It was limited and qualified. It was not a relation of blood, and, except as to the adopting parent, it created none of the rights which, by the general law, depended upon blood relationship. . . . The statute of distribution, and not the statute of adoption, controls this case; and unless the adoption made Anderson Lewis the next of kin of Lewis Jones, the decedent, he can have no share in the latter's estate, for it goes to his 'next of kin,' and to them only, by the express terms of the statute. The strict legal meaning of the phrase, 'next of kin,' is next or nearest in blood. In ascertaining who the next of kin is, the law follows the line of consanguinity. Such is the general rule of the common law. It is the same in this State under our general statute of distribution. It is so in every case, unless there be an express statutory exception. In the law of adoption, such an exception is made; but, as we have already seen, it applies alone to the estate of the adopting parent. The law of adoption arbitrarily establishes for the adopted child the relation of heir and next of kin to the

adopting parent; but it does not establish such a relation to the descendants of the adopting parent. As to them and their estates, the adopted child stands in no other relation than that existing before the act of adoption. The adopted child becomes a beneficiary in the estate of the adopting parent by virtue of a particular provision of law, which has no application to the estate of any other person. The estates of other persons are unaffected by that particular provision, and are left to be administered under the general laws of the State.

"That the phrase, 'next of kin,' in the statute of distribution, is there used in its strict legal sense, and means next in blood, is manifest from the context, and from the provision that the distribution shall be made among persons 'who are in equal degree equally.' The words, 'who are in equal degree,' signify those persons who stand in the same nearness of blood relationship to the intestate."

And, in concluding, the Court distinguished the case of *McKamie* v. *Baskerville*, 86 Tenn., 459, as follows:

"We cannot agree that either the reasoning or the decision in *McKamie* v. *Baskerville*, 2 Pickle, 459, justifies a conclusion contrary to that arrived at in this case.

"In construing the statute of legitimation, which is different in its object and in its language from the statute of adoption, the Court held, in that case, that legitimated children had all the rights of children born in lawful wedlock, and were capable of taking the estate of their father's brother as heirs and distributees. The case was well decided, on the ground that the bastard has the blood of his parents, and that the act of legitimation removes the taint of illegitimacy and gives the child the

same legal status, in all respects, as if born in lawful wedlock. The event of legitimation makes the legitimated person, to all intents and purposes, the lawful child of the legitimating parents. Such is not the effect of adoption.''

It is apparent that the reasons which led the Court in the Helms case, supra, to deny the claim in that case must, if approved, lead to a denial of the claim of the appellant here.

And in the more recent case of *Baker* v. *Miller*, 137 Tenn., 55, dealing with the inheritance tax law, Chief Justice NEIL said:

''The same result must follow if the defendant be treated only as an adopted child, since as such he has all of the rights of a child born in lawful wedlock so far as concerns his own right of inheritance from his adoptive father, although the latter cannot inherit from him, nor can he inherit collaterally from the adopting father's other children, or next of kin.'' Citing *Helms* v. *Elliott* and *Murphy* v. *Portrum*.

The reply of learned counsel for appellant is that the precise situation presented in the instant case differs from that in either of the cases above quoted from, and that the expressions relied on are dicta only.

We are unable to agree with counsel in thus restricting the weight to be given the pronouncements quoted. The distinguished writers of these opinions did not use language loosely, or announce lightly constructions of important statutes. It is true that the facts are not identical, and an opinion is properly construed in connection with the facts of the case. But, even though not essential to the decision of the case, a statement in the opinion upon a point even incidentally involved, where

apparently made with consideration and purpose, is at least a judicial *dictum*, as distinguished from mere *obiter dictum* and is entitled to much weight. Moreover, in so far as an opinion announces principles as a basis for the decision, it is in no sense *dictum*. The contrasting of the effect of legitimation and adoption, setting over the broad scope of the one against the limitations of the other, is a natural and incidental part of the opinions proper, written with careful consideration of the meaning.

A predicate stated for the holding in *Murphy* v. *Portrum, supra,* is that by adoption the child "only acquires such legal status as enables him to succeed to the real and personal estate of the adopting parent and beyond this gives him no inheritable right." And again, "He cannot inherit from the father's next of kin, nor can the father or his next of kin inherit from the child."

So, in the Helms case, Mr. Justice CALDWELL, noted for the clearness and aptness of his writing, reasons to his conclusion from such unqualified general statements as that, "as to the estates of other persons than the adopting parent, the law of adoption fixes no right in the adopted child;" and, "the relation . . . was purely personal. It was limited and qualified. It was not a relation of blood, and, except as to the adopting parent, it created none of the rights which, by the general law, depend upon blood relationship."

Legitimation and adoption are dealt with together in Chapter 15 of the Code of 1858, and the distinction above referred to and recognized in our cases is apparent. By Section 3642 (Shans. Code 5409-11). "The effect of legitimation is to create the relation of parent and child be-

tween the petitioner and person legitimated, as if the latter had been *born to the former in lawful wedlock.*"

But not so of the adopted child. By a following section 3645, it is provided that, "The effect of such adoption . . . is to confer upon the person adopted all the privileges of a legitimate child *to the applicant,* with capacity to inherit and succeed to the real and personal property estate *of such applicant* as heir and next of kin."

Not only is the language as a whole obviously more limited in its terms, but it contains the express restrictions which we have italicized.

This material difference between the effect of adoption and legitimation is approved in *Crocker* v. *Balch,* 104 Tenn., 8, citing *Murphy* v. *Portrum, supra.* It is upon this distinction that the right to inherit in the one case and its denial in the other largely rests. It is well settled that the statutes under consideration, being in derogation of the common law, are construed strictly.

*Meriwether* v. *Bank,* 153 Tenn., 696, and *Redmond* v. *Wardrep,* 149 Tenn., 35, are cited for appellant. Neither of these cases are in point. In the first of these cases the opinion opens with the statement that, "The sole question involved in this cause is the right of the children of an adopted child to inherit from the adopting parent." The language of the opinion must be referred to the case in judgment. The right of the children of the adopted son to inherit flowed directly from the grandfather through the adopted son who is expressly given the right by the Statute "to inherit and succeed to the real and personal estate of such applicant," that is the adopting father. No question of collateral inheritance was involved or discussed. The Redmond case held only that

since the adopted child under the Statute succeeds to the property of the adopting father in all respects as a child, he had the right to administer on the estate of the father.

Counsel discuss exhaustively and interestly the holdings in other jurisdictions, some of which reach a *contra* conclusion. In some of these cases the language of the Statutes differs from ours, but the weight of authority appears to be in harmony with our holdings. For example, 1 C. J., p. 1401, sec. 131, reads:

"In a few states the statutes expressly provide that an adopted child may inherit from certain relatives of the adoptive parent. In the absence, however, of such special provision, an adopted child cannot inherit from the collateral kindred of its adoptive parent, nor from the ancestors of such parent, nor from his natural children." (Citing many cases.)

And in 1 R. C. L., p. 621, sec. 32, it is said that:

"In fact it may be laid down as a general conclusion that while the statute of adoption must be read into the statute of dower and that of descent and distribution, it is with this singularity always to be observed, viz., that the adopted child is so let in only for the purpose of preserving in full its right of inheritance from its adoptive parent, and not otherwise."

And see note in 38 L. R. A., 8. Also, 38 A. L. R., 1, reporting *In re Bradley*, 185 Wis., 393.

We find no error in the judgment. Affirmed.